RADER, Chief Judge,
dissenting-in-part.
I join the court’s opinion in its entirety, except for the affirmance of the district court’s denial of Motorola’s request for an injunction. To my eyes, the record contains sufficient evidence to create a genuine dispute of material fact on Apple’s posture as an unwilling licensee whose continued infringement of the '898 patent caused irreparable harm. Because of the unique and intensely factual circumstances surrounding patents adopted as industry standards, I believe the district court improperly granted summary judgment. Therefore, on this narrow point, I respectfully dissent in part.
*1333 At the outset, a patent adopted as a standard undoubtedly gains value by virtue of that adoption. This enhancement complicates the evaluation of the technology independent of the standardization. By the same token, the standardization decision may also simply reflect and validate the inherent value of the technology advance accomplished by the patent. Untangling these value components (at the heart of deciding whether a putative licensee was “unwilling” to license, and thus irreparable harm and other injunction factors) requires intense economic analysis of complex facts. In sum, right from the theoretical outset, this question is not likely to be susceptible to summary adjudication.
In reciting the legal principles for an injunction, this court accurately states the inquiries. Those principles supply no per se rule either favoring or proscribing injunctions for patents in any setting, let alone the heightened complexity of standardized technology. This court notes that a patent owner in a standard context “may have difficulty establishing irreparable harm .... [but] an injunction may be justified where an infringer unilaterally refuses a FRAND royalty or unreasonably delays negotiations to the same effect.” Majority Op. 1332 (citing U.S. Dep’t of Justice and U.S. Patent and Trademark Office, Policy Statement on Remedies for Standard Essential Patents Subject to Voluntary F/RAND Commitments, at 7-8 (Jan. 8, 2013)).
Market analysts will no doubt observe that a “hold out” (i.e., an unwilling licensee of an SEP seeking to avoid a license based on the value that the technological advance contributed to the prior art) is equally as likely and disruptive as a “hold up” (i.e., an SEP owner demanding unjustified royalties based solely on value contributed by the standardization). These same complex factual questions regarding “hold up” and “hold out” are highly relevant to an injunction request. In sum, differentiating “hold up” from “hold out” requires some factual analysis of the sources of value — the inventive advance or the standardization.
The record in this case shows evidence that Apple may have been a hold out. See, e.g., Apple, Inc. v. Motorola, Inc., 869 F.Supp.2d 901, 914 (N.D.Ill.2012); Appellees’ Br. 64-65, 72-73; Appellees’ Reply Br. 26-27; J.A. 118884-86. This evidence alone would create a dispute of material fact.
More important, the district court made no effort to differentiate the value due to inventive contribution from the value due to standardization. Without some attention to that perhaps dispositive question, the trial court was adrift without a map, let alone a compass or GPS system. In fact, without that critical inquiry, the district court could not have properly applied the eBay test as it should have.
Instead of a proper injunction analysis, the district court effectively considered Motorola’s FRAND commitment as dis-positive by itself: “Motorola committed to license the '898 to anyone willing to pay a FRAND royalty and thus implicitly acknowledged that a royalty is adequate compensation for a license to use that patent. How could it do otherwise?” Apple, 869 F.Supp.2d at 914. To the contrary, Motorola committed to offer a FRAND license, which begs the question: What is a “fair” and “reasonable” royalty? If Motorola was offering a fair and reasonable royalty, then Apple was likely “refusing] a FRAND royalty or unreasonably delaying] negotiations.” See Majority Op. 1332. In sum, the district court could not duck the question that it did not address; *1334 was Motorola’s FRAND offer actually FRAND?
Furthermore, the district court acknowledged the conflicting evidence about Apple’s willingness to license the '898 patent: “Apple’s refusal to negotiate for a license (if it did refuse — the parties offer competing accounts, unnecessary for me to resolve, of why negotiations broke down) was not a defense to a claim by Motorola for a FRAND royalty.” Apple, 869 F.Supp.2d at 914. Yet this scenario, adequately presented by this record, is precisely one that the court today acknowledges may justify an injunction.
In my opinion, the court should have allowed Motorola to prove that Apple was an unwilling licensee, which would strongly support its injunction request. The court states that “the record reflects that negotiations have been ongoing,” Majority Op. 1332; but, as the district court even acknowledged, Motorola asserts otherwise— that Apple for years refused to negotiate while nevertheless infringing the '898 patent, see, e.g., Appellees’ Br. 64-65, 72-73; Appellees’ Reply Br. 26-27. Motorola should have had the opportunity to prove its case that Apple’s alleged unwillingness to license or even negotiate supports a showing that money damages are inadequate and that it suffered irreparable harm. The district court refused to develop the facts necessary to apply eBay as it should have. Consequently, the case should be remanded to develop that record. For these reasons, I respectfully dissent in part.